THE MILWAUKEE AND ST. PAUL RAILWAY COMPANY

*v.*

WILLIAM H. SMITH.

1. CARRIERS — *implied contract as to place of delivery.* The rule in this State is, that where goods are delivered to a railway company marked to a place not upon the line of its road, but beyond the same, with no other directions or without any express contract as to the place of delivery, the law will imply an undertaking on the part of the carrier to transport and deliver the goods at the place to which they are marked.

2. LEX LOCI — *governs contract of carrier.* Where goods are delivered to a carrier in Wisconsin, the contract to be performed there, the laws of that State will govern as to the construction of the contract, and determine the extent of the carrier's undertaking.

3. EVIDENCE — *common law of a State, how shown.* The unwritten or common law of another State may be proved by the testimony of competent witnesses instructed in its laws.

APPEAL from the Superior Court of Cook county; the Hon. ARTHUR A. SMITH, Judge, presiding.

This was an action of assumpsit, brought by Smith against the appellant, to recover damages for the breach of an alleged contract of the defendant as a common carrier. By agreement the cause was tried by the court without a jury, who rendered judgment in favor of the plaintiff for $1,554.51.

Mr. Charles M. Sturges, and Mr. Sanford B. Perry, for the appellant.

Messrs. Tenneys, Flower & Abercrombie, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

This was an action brought by attachment in this State, against the appellant, to recover for the breach of an alleged contract, in failing to carry certain goods and chattels from Milwaukee, in the State of Wisconsin, and deliver the same at Eau Claïre, in said State.

The facts of the case were these: The appellant was a Wisconsin corporation, owning and operating a line of railway running from Milwaukee, in the State of Wisconsin, to La Crosse, in said State, Milwaukee being its eastern and La Crosse its western terminus. It was the ordinary course and general business usage of appellant to receive at Milwaukee from consignors, to be carried on its railway, goods and merchandise, marked and directed to places beyond La Crosse, and off the line of its railway, and the same to carry to La Crosse, and there, as a forwarder, within a reasonable time, to deliver to other carriers for forwarding to or towards the places to which such goods and merchandise were marked and directed. Eau Claire is a town in Wisconsin. The customary route and mode of transporting goods and chattels from La Crosse to Eau Claire, was by way of the Mississippi river, on which La Crosse is situated, by steamboats owned and operated respectively by the Northwestern Union Packet Company, and the Northern Line Packet Company, to Reed's Landing on said river, and thence to Eau Claire by small steamboats running on the Chippewa river, on which Eau Claire is situated. On or about May 13, 1870, appellee delivered to appellant at Milwaukee, for carriage, the goods in question, marked and directed to appellee at Eau Claire. Within a reasonable time thereafter appellant safely carried the goods to La Crosse, and there delivered the same to the Northwest-

ern Union Packet Company, for carriage for the appellee to or towards Eau Claire. There were no directions to and no express promise or undertaking upon the part of appellant, in respect of the carriage from Milwaukee to any place whatever.

The only contract in that respect is such an one as the law implies from the facts above stated. There is no dispute about the facts.

The only question is as to the law — whether that implied a contract on the part of appellant, to carry to, and deliver at, Eau Claire.

According to the law of this State, as decided in the case of *I. C. R. R. Co.* v. *Frankenberg et al.* 54 Ill. 88, and recognized in later decisions, the contract was one to carry to, and deliver at, Eau Claire. Such an agreement would be implied from receiving the goods marked and directed to that place. But it is not the law of this State which is to govern — it is that of Wisconsin. The transaction took place in that State, and the performance was to be there. It is an established principle, with respect to personal contracts, that the law of the place where they are made shall govern in their construction, except when made with a view to performance in some other State or country. *The Pennsylvania Co.* v. *Fairchild et al.* 69 Ill. 260. There is no statute of Wisconsin upon the subject, according to the testimony. It depends, then, upon the unwritten or common law of Wisconsin. Such law of a foreign State is to be proved by the testimony of competent witnesses instructed in its laws, under oath.

There appears in the record the concurring testimony of three practitioners of law in Wisconsin, of more than twenty years' standing, whose practice has been continuous and extensive, and in the highest courts in the State, that upon the state of facts in this case, the promise and undertaking which, under the law of that State, would arise upon the railway company, would be one to carry and deliver, or offer to deliver to the connecting line at La Crosse, unless prevented by the

act of God, or the public enemies — that such is the contract implied by the unwritten law of the State of Wisconsin. There is no opposing testimony.

This would seem to be sufficient to settle the question as to what is the law of Wisconsin.

But inasmuch as the witnesses, on cross-examination, state that they do not think the law of Wisconsin to be different from the common law, and as there has been no direct decision of the Supreme Court of Wisconsin upon the question, the testimony of the witnesses, it is said, amounts to no more than an opinion on their part that such is the common law; and that this court must say for itself what the common law is upon this point; and that it is what this court decided it to be in the *Frankenberg case*. But the common law is not unvarying in all places where it prevails. It exists with more or less of modification in the different States, and it is not unchangeable in the country of its origin.

The rule adopted by this court in the *Frankenberg case*, that when a carrier receives goods to carry, marked for a particular place, he is bound to carry to and deliver at that place, agrees with the present rule of the common law in England. But this court admitted, in the case of *Illinois Central Ry. Co.* v. *Copeland*, 24 Ill. 332, where it first expressed a preference for this rule, that the first English case which adopted it was that of *Muschamp* v. *The Lancaster & Preston Junction Railway Co.*, decided in the Court of Exchequer in 1841, and reported in 8 Meeson & Welsby, 421; and it was also said in the *Copeland case*, as well as in that of *Frankenberg*, that the consideration of public convenience had weight with this court in determining upon the adoption of that rule; and it was further said, in the latter case, that the received doctrine among the courts of this country might be said to be, that the carrier was not responsible beyond his own route, except upon his special undertaking so to be liable.

Now the question is not, what is the common law of England, or of this State, but what is the common law, in this respect, of

Wisconsin ?  · The courts of that State are free to act upon their own notions of public convenience, as well as the courts here. A rule which this court deems to be promotive of public convenience, the courts of Wisconsin might hold to be otherwise. The witnesses, or some of them, state one ground of their opinion as to what the law of Wisconsin is, to be judicial recognition.

The case of *Conkey* v. *The Milwaukee and St. Paul Railway Co.*, decided by the Supreme Court of Wisconsin, and reported in 31 Wis. Rep. 620, was in evidence.   The decisions of that court, so far as we have been referred to them, indicate a leaning in favor of the rule of law as testified to by the witnesses, and may be said to add strength to their testimony.

Persons transacting business and entering into contracts within a State, must be supposed to seek and rely upon the information to be obtained from the legal profession of such State, in regard to the legal force of their contracts.   The result of the best professional advice in the State of Wisconsin at the time the transaction in question took place, as to its legal effect, would have been, as we must believe from the evidence, that it was only a contract to safely carry to La Crosse and deliver within a reasonable time to the connecting line at that place.   That, from the evidence, we think should be held to be the law of Wisconsin.

Although this court has held the law to be different in this State, we would not be so wedded to our own decision as to impose it upon the citizens of another State as the law of that State, and enforce upon them the performance of a contract they had no reason to suppose that they had ever made, and which the best legal advice obtainable in the State where the transaction was had would have pronounced they had never entered into.

Finding that the contract in question, according to its construction by the law of Wisconsin, as testified to, was fully performed, the appellee had no cause of action, and the judgment must be reversed.            *Judgment reversed.*